Our next case is 20-9510, Blanca Telephone Company v. FCC, and for the petitioner, Mr. Welch. Yes, good morning. Thank you, Your Honor. Timothy Welch on behalf of Petitioner Blanca Telephone Company. I'm going to try to reserve one minute for rebuttal time. This case of first impression examines a summary asset forfeiture order, where the FCC, without regard to the forfeiture provisions of the Communications Act, determined that Blanca Telephone committed universal service fund fraud. Is this a forfeiture case or is it a collection of debt owed? It's a forfeiture case, Your Honor. How do we know that? What indicates that in this record? In the record, what indicates that is the fact that the FCC has stated that its purpose is to enforce the law against Blanca to deter misconduct, to find wrongdoing, to protect ratepayers, to protect subscribers, to protect competition, to protect federal funds, to protect the public from waste, fraud, and abuse, and to redress, most recently, redress misappropriation of federal funds. Also, the FCC is seizing money from Blanca, even though the FCC's own financial records show that Blanca has no debt. Isn't the penalty here, if it is one, the amount of the overpayment? And why isn't that simply a reimbursement for overpaid funds? I'm sorry, I didn't follow that. Isn't the remedy here the collection of the amount of the overpayment? That's what the FCC calls it, a collection. But before we get to a collection, they had to do an adjudication of a rule violation. We noted in our, somewhere along the line. Do you think what is required here is a formal adjudication? Not a formal adjudication, but an adjudication where Blanca is able to participate. Well, was Blanca able to participate when all of the auditing and investigation went on to determine the subsidies that have been paid, and why they've been paid, and how much has been paid? Blanca was a fact witness, participated in that aspect, yes. The government said, give us this document. Blanca gave them one and a half terabytes of information, yes. And Blanca was subject to inquiries from physicians and interrogatories. But Blanca was never presented with, well, here's the rule we think you violated, what do you think about that? So they were never told why there was an investigation or an audit? Just generally USF funds. Yeah, overpayment of USF funds. But it's not even overpayment, it's that he received, that Blanca received any money from the USF for providing a mobile cellular telephone exchange service in a rural area. Which it's undisputed that the rural area is a high cost area where carriers can get USF funding. As a competitive carrier. Blanca is not a competitive carrier, it's an incumbent telephone exchange company. And so with the USF fund, as I understand the FCC's argument is if you're a competitive if you're a competitive LEC, then you can receive USF, you could at the time receive identical support funding to match a rate of return incumbent LEC's subsidy under the USF, but only as a competitive carrier. And as you point out, Blanca is not a competitive carrier. But there's no limitation in the rules that says Blanca couldn't provide telephone exchange service with a cellular telephone system. Can I ask you this, Mr. Welch? So with regard to a rate of return carrier like Blanca, was there a notice prior to 2005 that an ILEC like Blanca could only obtain high cost USF support for expenses that it incurred as for BETRS? Um, well, I understand it, that Blanca reported its cost to NECA and SEC as BETRS related expenses. And I think what the SEC is arguing is, well, mobile services, by definition, are not BETRS, and that you knew that BETRS was all that you would be able to get subsidized for. Well, on record page 26, your honor, we explained what the FCC's confusion is. The name of Blanca's telephone service that Blanca named was BETRS, B-E-T-R-S, because it had previously provided fixed link service. Those customers all got cell phones. But Blanca, for continuity purposes, named continuity, just kept calling the cellular service BETRS. What the FCC is saying is Blanca is restricted in the USF funding it receives because it called it service BETRS, as if Blanca naming its service is a legal standard that Blanca had to follow. Well, when is it entitled to receive subsidies? When it is actually a BETRS carrier that is serving fixed lines to a study area with restricted area and not covering mobile service. No, Blanca is eligible to get funding for mobile services, according to the USF definitions in Part 54.5. As an incumbent carrier? It's not limited in those rules as to whether it's incumbent or competitive. It just has to go through that door. If you're a competitive carrier, then yes, but Blanca isn't. But where's that rule, your honor? Where's the rule that Blanca had to be a competitive carrier to get mobile services, USF reimbursement? I've been looking for 13 years. I don't know. Mr. Welcher, are you challenging the amount of the penalty here? I would call the penalty everything Blanca is paying. The FCC doesn't see any penalty at all, but we know at least there's three and a half million dollars of money being collected above and beyond the debt, which is asserted in the orders, 6.7 million dollars. If this goes the way it's going, the FCC will collect about 10 and a half million dollars. So all that extra is penalty. I would say the whole thing's penalty. Are you challenging the calculation of that amount? The FCC's calculation, no. And the reason being, if the FCC, and we wouldn't be here for seven dollars, but if the finding was you owed seven dollars, it would be wrong. If it's 700 dollars, it's wrong. If it's 7 million dollars, it's wrong. If it's 700 million dollars, it's wrong. It doesn't matter to us what the accounting was. We're not challenging that. We're saying any amount is wrong because you didn't have a rule in place in 2004, which told Blanca going forward, we're going to say that's improper use. What the FCC has done is created a 50-page story in this case as to why Blanca couldn't get the USF money that it received, but it never points to, we told this story to you in 2004 or 2003. It just made it up for this case. That's one of our main arguments. It's the main argument. There's no notice in this case of the story the FCC is telling. Blanca had no advance notice that it couldn't claim the USF funding for mobile services that it was claiming. Now, if we could take a moment... Doesn't that really indicate that Blanca is unaware of the regulations that apply to its business? That Blanca was unaware of the law that applies to the functioning of its business? No. Blanca knows very well the law that applies to the functioning of its business and the FCC... And the law that prohibits subsidies to incumbent carriers that are providing mobile services? There's no law that provides that, may not use services that are not competitive to subsidize services that are subject to competition. That's what the statute says, but it doesn't say Blanca can't get money for cellular telephone exchange service. And in section, I think it's 332, there's an exception for telephone exchange service, which is regulated by the state. And the respondent's brief doesn't discuss the 1994 rulemaking where the FCC did away with the betters restrictions and said, if the state allows it, you can do it. So Blanca did it. That was 1994. Blanca got its cellular licenses in 1995, after that decision came out. Now, for 14 years after cellular licensing started, there was no service in the area. So it's not a question of, was Blanca keeping competition out? The question was, in San Luis Valley, there was no cellular telephone service. So Blanca stepped up and said, I'll do it. And I won't make much money doing it, even with the USF fund, but I'll do it to get service to the subscribers. Now, if we could take a look, a quick peek at the table of authorities for the, for respondents on page nine, Roman numeral nine at the top. And this is an example. You won't find in I'll let Mr. Novak contradict me. There's not a single citation in this table of authorities that when you read it prevents Blanca from doing what it did. Not one. There's not one in here. And an example would be at the top of page nine, there were two citations to part 36, neither of which are in the demand letter. So we didn't get notice of anything that's in here because none of this is in the demand letter, not a single citation, except for some debt collection Improvement Act regulations, which has nothing to do with USF funding. And the couple of cellular rulemaking proceedings, which were superseded in 1994, but which respondents don't discuss in their brief. So there are two medically if, if, if the restriction on funding for an island is confined to the ETRS or other fixed wireless costs in a prior FCC decision as of 2005, would that have provided adequate notice for purposes of due process, even if it, even if the citation to that FCC decision hadn't been present in the demand letter? No. Part of the notice, there's two kinds of notice problems in this case. One at the time Blanca drew the money, did it have notice of a rule? So your question goes to that. But the second notice is the demand letter doesn't cite anything. It didn't give us anything to respond to. It just said, you're eligible to receive USF funding. That's record page three, note two. That's the only legal determination based on a statute in that letter. And the rest of it is a story about why Blanca is not eligible. But, you know, without regard to whether or not the citation to a particular FCC decision that appeared in the demand notice, would you agree that as a regulated carrier, you would be assumed to be on notice of prior FCC decisions, interpreting the regulations. So if they said you are restricted to be ETRS funding in the demand notice, presumably Blanca would have been aware of the reason for that by virtue of its awareness of prior FCC decisions, right? And I'm telling you, we're not aware. Okay. And then, so I have 14 days after June 2nd, 2016, to figure out what the FCC has been doing for 10 years. And I don't have any citations to work with. So our complaint to the FCC is you had a vague reference to three accounting rule parts, but the lack of specificity was a critical notice failure. There are literally, and this is record page 26, there are literally scores of rules in those rule sections. It is impossible to know which rule the FCC thinks that Blanca violated. And I see that my time is up. Thank you, counsel. Let's hear from the FCC now, Mr. Novak. Good morning, your honors. May it please the court. I'm Scott Novak for the government. We think this case largely boils down to just a few key facts. Blanca sought and obtained federal subsidies that were available only to support basic local telephone service to fix locations and only within its designated study area. But in fact, as Blanca later admitted to the commission, it claimed subsidies for mobile telephone service for which it wasn't eligible and for service outside its eligible study area. In response, the commission directed Blanca to repay the public subsidies that it improperly claimed. And in fact, that's all the government has sought. We haven't sought to impose any sort of fine or any forfeiture penalty. The government is simply seeking dollar for dollar recovery of the public funds that Blanca improperly obtained when it misreported the nature of its service. And when we're talking about public funds, the government has a responsibility to seek recovery of any improper payments. The commission faithfully and lawfully carried out that responsibility here. Now, we think that largely suffices to resolve this case, but I'm happy to answer any questions that the court may have. Well, my question is exactly what regulation of the SEC did Blanca violate? Your Honor, this stems from 47 CFR 32.14. It's in our statutory addendum at page eight. That's the rule that defines what qualify as regulated accounts. Now, I think Blanca is and that cost study had it indicate which costs fall into its, quote unquote, regulated accounts. And it included in its regulated accounts, wireless infrastructure that it turns out was used only for mobile cellular service. It described that as better service. That wasn't true, we later found out. And as Blanca admitted to the commission, it was providing mobile service. Mobile cellular service is not a regulated service in the meaning of 47 CFR 32.14. Regulated accounts are only those that are subject to mandatory tariffing requirements and no tariff supply to mobile service. In fact, the commission has mandatorily de-tariffed mobile cellular service. So let me start, I don't mean to interrupt you, Mr. Dovick, but under what particular regulation does regulated mean a mandatory as opposed to a voluntary tariff? So section 32.14a says that regulated means tariffs, sorry, service that are subject to tariff requirements under Title II of the Communications Act. And then 32.14b talks about tariff requirements under state law. And there are no tariff requirements under state law that apply to mobile service. And that's true for two reasons. Number one, if you look at 32.14b, it says except where such treatment is prescribed or otherwise excluded from the requirements pertaining to regulated telecommunications products and services by the Federal Communications Commission. And the other place you'll see that, the forbearance provision that we used, it's 47 USC section 160. And subsection e says that when the commission forbears from applying a provision, a state can't continue applying it either. It says a state commission may not continue to apply or enforce any provision that the FCC has determined to forbear from applying. So when the FCC said in the late 1990s that we're forbearing from applying tariff requirements, tariff requirements shall no longer apply to mobile service, that eliminated all federal and state tariffing requirements. And in fact, Blanca hasn't pointed to anything in Colorado law that purports to apply tariffs to mobile service. It claims to have had a tariff for bedders. And of course, the service that it provided wasn't bedders. Bedders is a fixed service. And what Blanca provided was mobile service. It wasn't restricted to fixed locations in any way. And of course, in addition, Blanca provided service outside its eligible study area. And there's no dispute over that. And its cost studies, which were the basis for the subsidies being paid out, directed it to account for its cost for providing regulated service within its study area. And it turns out it included costs for service outside the study area. And what do we have as evidence here in this record? That Blanca was aware of the rules that applied to it, how and when it can receive subsidies and what its limitations were? Your Honor, I guess I'd respond to that in two fall. We're talking about when we're talking about local telephone exchange service, especially rural areas, a pervasively regulated industry and entities that participate in closely regulated industries. It's incumbent upon them to familiarize themselves with the rules that govern their conduct. And I would point the court to the Supreme Court's decision in Bennett that says when you're talking about a subsidy program, which is what we have here on top of the ordinary rules that apply to all local exchange carriers. If there's any question, if there's any confusion, it's incumbent upon the entity that's seeking subsidies to seek clarification. Blanca, if it had any question about whether these were regulated accounts, could have sought clarification from the FCC and it didn't do so. Well, we have a long running investigation and audit going on here. Was there no notice or letter or anything sent to Blanca while that was going on saying, look, here's your problem. Here's the list of regulations you're violating. And this is why we are investigating you and auditing your records. Your Honor, I think the demand letter provided that notice. Now, Blanca in its brief complains that it didn't have any. Well, it doesn't think it's efficient process before that demand letter. We do, in fact, think it had extensive process before then. But the rule, as this court explained in Riggins, is that the notice that's required is pre-deprivation notice. There's one round of notice and comment required. And that happened here. We issued a demand letter after having conducted much of this investigation that put Blanca on notice of the basis for this action, factually and legally. Blanca then had an opportunity to state its case to the commission, make its arguments. And even after that, it filed multiple supplements. After the commission issued its decision, Blanca then sought reconsideration from the commission. So at that point, it again had opportunity to make any further arguments that it wished to make. And Your Honor, I would point out the Administrative Procedure Act says that court shall take due regard of the rule of harmless error. So even if there's any argument that Blanca is making that it didn't have notice with that demand letter and the initial proceedings before the commission, it had abundant opportunity afterwards to do so. And I haven't heard any explanation from Blanca of what other or additional arguments it would have made before the commission if it had some sort of other or additional argument, sorry, other additional notice that it hasn't already had there. So we don't see any notice issue. And if the court were to think there was any notice issue, it seems to me that it's clearly harmless given how the proceedings here proceeded. So you're saying if they didn't know then, they know now? Your Honor, if they didn't know then, they knew at multiple other stages during the administrative proceedings, not even just now, not even after the administrative proceedings completed and multiple intermediate steps. So you're arguing that Blanca, given its business operation, should know the rules and these rules are obvious to anyone in this business. And as you start your investigation, it is very obvious to you and to those investigating that they are breaking the rules. The thing I don't understand here is why you kept giving them money. It was so obvious and so wrong. Why don't you just turn off the spigot? Your Honor, once the facts were known, then I think it became obvious what the issue here was. And most of this, I think by 2012 was the last year that Blanca had been doing this improper accounting. So a lot of this wasn't fully known until post-2012. And obviously at that point, the spigot was off because Blanca ceased the improper reporting on its own. Now, when we first have reason to suspect that they're, well, let me say this, we rely largely in administering this program on certifications by the regulated entities. And the entities, including Blanca here, have to certify to the government that these cost studies are complete, accurate, and comply with all rules issued by the commission. And generally, those certifications are relied on. We would have no way of knowing from the cost study alone that anything suspicious happened here. It was in the course of a routine random audit that indications first turned up that Blanca's accounting wasn't above the level. And then an investigation took place. And when we do that investigation, it does need to be a careful investigation. We need to make sure that everything is done properly and by the book. And of course, Blanca is complaining elsewhere here that it thinks it didn't get sufficient process. Well, the reason it took a period of time to run this all down is because we did have to conduct a great deal of investigation and process to make sure we knew exactly what had happened and to back out the accounting and make sure we determined the I don't think that was a problem. I think that was the government doing its due diligence and its responsibility and providing the precise process that Blanca now complains about. As I read the briefs, Blanca is also complaining that you never really showed him the books to identify what the improper overpayment was or what the subsidy they received was. Why weren't they given access to those records in the administrative files? Your Honor, they do have access to those records. If you look carefully, they're not complaining. Otherwise, those cost studies, which were the books, were Blanca's own books. Blanca provided them to the commission. And in fact, once those were subpoenaed, Blanca had an obligation to preserve them. It has those books. The accounting that was used by Blanca's own consultants when previously it had returned the portion of the funds for other years to NECA. And as Blanca, I think, conceded earlier in the argument, it's never been raising any challenge to the accounting, to the determination, the calculation of the amount due. It's only challenging whether it owes any repayment at all. So Blanca does have all of the that even though it has some of these records, they should have been included in what was filed as a quote-unquote record in this court. Now, we do believe that the record we filed is complete. And I think if you take a close look, Blanca has never clearly explained what additional materials it thinks it needs, that it doesn't already have, that it are in any way relevant to any argument that it preserved and is advancing in this court. The Communications Act requires that any challenge, any staff level determination, anything in the demand letter has to be presented to the Commission itself. That's 47 U.S.C. section 155. Doesn't the APA require you to disclose to respondents what the agency is relying on? Yes, Your Honor, we did disclose to them. Again, I think they have all of the relevant materials. Blanca hasn't ever pointed to what materials it thinks were needed, were relied on, that it didn't have access to. So it has, Your Honor, all of those materials. And if it thought any of those materials are relevant, first of all, it should have, it had to present them to the Commission itself in its application for review or else they're forfeited. But second of all, Blanca could have tendered them to the court in any number of ways. It could have appended cost studies or other materials to its brief. If it thought there was a problem with those materials not being in the record, it could have submitted a motion to supplement the record. I think the fact that it hasn't done so is telling. And again, I would point out that really the scope of dispute remaining in this case. The court is giving a speech and it's forfeited. It's immaterial. I see that my time is close to expiring. So if the court has any further questions, I'm happy to answer them. And if not, then we simply ask that Blanca's petitions for review be dismissed or denied. Thank you. I have one question, Mr. Novak. On the statute of limitations, Mr. Welch is pointing out that there was a penalty that was requested. I assume he's talking about the delinquency penalty. And so wouldn't the delinquency penalty at a minimum be subject to the five-year statute of limitations? And if so, how do we calculate that? We really don't have any information about when the delinquency was triggered or for how much. And so I have difficulty in applying the five-year statute of limitations to the delinquency penalty. Can you help me out? Yes, Your Honor. I think that factually Blanca is a little confused about the supposed delinquency penalty. So there is no penalty that had been assessed for the improper accounting for the years 2005 through 2010 through the underlying misconduct. The commission has only sought dollar-for-dollar recovery. For that matter, didn't seek interest or any inflation adjustment or any penalty for that. What I think, having again restudied Blanca's brief, is now pointing to is that once the commission identified this debt and declared that the debt was due in 2016 and 2017, then it started accruing interest. And when that became delinquent and Blanca didn't pay it and didn't enter into any satisfactory arrangement for a payment plan, after 90 days, that interest rate increased. And it's now been accumulating a 7% interest, but not dating back to the underlying rule violations in 2005 to 2010. It's the fact that Blanca owes a debt to the government now, that it's delinquent on now. It sought a stay from this court and this court denied a stay. It sought an injunction pending appeal. This court denied it. So I think the court has acknowledged, those were other panels of this court, to acknowledge that this debt is due. The government is entitled to collect it. Blanca has to pay it. If it were to succeed and prevail on this appeal, it might be able to get that refunded. But there is no excuse for having a debt that is now due, which hasn't been stayed, for not making that payment. And the fact that it's incurring interest or even any sort of penalties at this stage, I think is separate from the question as to whether the relief ordered in the order, the repayment of the 6.75 million in improper funds, was a penalty. It wasn't. Thank you. Thank you, your honors. Thank you, counsel. Mr. Welch, your time expired, but if you want 60 seconds rebuttal, I'll allow it. Thank you, your honor. Regarding the penalty, the FCC's own records show Blanca has no delinquent debt. So they don't address that in their brief. But we give the documents to the court, like Mr. Novick, although he objected to us doing so, we gave the documents saying, well, we don't have a debt. Why are you assessing any penalties? And I'd like to address the comment that, well, Blanca has the books. Yeah, Blanca has one and a half terabytes of information. I want to know, where did the FCC see that Blanca misreported or mischaracterized anything? They didn't mischaracterize anything. There's a box that says, how much was your switching cost? Section 36.125. There's a box that says, how much was your radio central office equipment? Section 36.126. And Blanca put the arguments. You're excused and the case will be submitted.